**NORFOLK & WESTERN RAILWAY COMPANY, Appellant,**

v.

**RISS INTERNATIONAL CORPORATION, Respondent.**

No. KCD 28444.

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1977.

Logan J. Wilson, Kansas City, for appellant.

Rodger J. Walsh, Kansas City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action by railroad to recover charges claimed owed it by truck line for transporting trailers. Truck line counterclaimed for damage to trailers. Trial court directed verdict for plaintiff on counterclaim. Jury found for defendant on plaintiff's claim. Plaintiff appeals.

Between August, 1968, and August 1973, Riss International Corporation ("Riss"), a Kansas City based trucking company, employed the services of Norfolk & Western Railway Company ("N & W") in transporting loaded and empty truck trailers between various points served by N & W and connecting rail lines. The Riss-N & W trailer-on-flatcar (TOFC) operation was under what is known as "Plan 1" TOFC service. Under this plan, freight moves in the motor truck trailers, based upon the trucker's motor carrier tariff. The railroad's compensation for its service is determined by agreement between the trucker and the railroad, published in what is known as a "division sheet," which sets the railroad's compensation for the transportation of trailers between various points.

Under a Plan 1 operation, the trailer moves over the railroad on a waybill issued by the railroad. The waybill is the basis for the billing of the trucker by the railroad. It includes the trailer description by owner and number, its weight, the rail routing,

and the railroad's charge for its service. The amount of the charge is usually entered from the appropriate division sheet by the clerk who prepares the waybill. On some occasions the entry is not made until the waybill reaches the railroad's billing office. The trucking company is billed periodically on the basis of the waybills.

During the time here involved, N & W moved 738 trailers for Riss. Riss generally paid the billings regularly made by N & W. The controversy arises primarily out of charges claimed by N & W upon subsequent audit of the original charges stated in the waybills. As an example, on December 6, 1972, N & W billed Riss for $52.53 "balance of charges" on three shipments under waybills dated November 23, 1970, October 15, 1970 and September 17, 1970.

N & W's original petition, filed July 27, 1973, claimed $7,000 was owed by Riss for shipments from August 1, 1970 to the date of filing. By an amended petition further amended at trial, N & W claimed $15,020.39 for shipments from August 1, 1968.

In proof of its claim, N & W offered the testimony of Mr. Jerry B. Shaver, the N & W assistant to the manager in motor pricing. According to the witness, he was "responsible for the pricing and negotiation and publication of the Plan 1 division sheets." He produced and identified as N & W business records the division sheets applicable to the N & W-Riss dealings during the period in question and N & W file copies (or photostats thereof) of all waybills under which Riss trailers moved. He also produced twenty-one handwritten sheets which contained summaries of information found on the waybills, including shipments involved, the basis of charges, including division sheet, minimum weight, rate and charge based upon such information. Further information included bill number, amount billed for each movement and amount paid. Under the heading "Balances" was a debit column in which appeared the difference between the amount paid and the correct charge when the amount paid was less. An excess of payment over the charge appeared in a credit column. As originally computed, debits totalled $15,819.45 and credits $841.81, leaving a balance of $14,977.64. In the examination and cross-examination of the witness, errors in arithmetic and failure to credit Riss for over-payment in several instances were pointed out and acknowledged by the witness. Recalculation, upon correcting those items, increased the amount claimed to be due N & W by $42.75 to $15,020.39.

According to the witness, N & W's Zone Revision Bureau listed all Riss shipments on the sheets and he and his predecessor in his position "were responsible for taking the raw data * * * and computing and figuring up the proper charge from the applicable division sheets * * *."

The only witness offered by Riss testified in support of its counterclaim for damage to its trailers.

At the conclusion of the presentation of evidence, motions for directed verdict on behalf of both parties were overruled. Plaintiff's motion directed to defendant's counterclaim was sustained. Plaintiff's claim was submitted to the jury which found for defendant. Defendant filed a post-trial motion, requesting, alternatively, judgment in accordance with its motion for directed verdict or a new trial. The motion was overruled and plaintiff appealed.

In this court, plaintiff contends that it was entitled to a directed verdict because "every element essential to the Norfolk and Western's cause of action was established by documentary evidence uncontradicted by Riss * * *."

An oft-repeated statement of the rule relied upon by appellant appears in *Coleman v. Jackson County*, 349 Mo. 255, 160 S.W.2d 691, 693[2] (1942), as follows (citations omitted):

" * * * It is a generally accepted rule in this state that a verdict may not be directed in favor of the proponent, that is the party upon whom the law casts the final burden of proof. * * * There is, however, a well-recognized exception to the rule. If the opponent, that is the party not

having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass. * * * "

Appellant contends that its case was proved by the following documentary evidence:

1. The correspondence between Riss and N & W establishing Plan 1 TOFC arrangements.
2. The applicable division sheets.
3. The waybills for Riss shipments.
4. The summary of the 738 separate shipments involved, showing the applicable charges derived from the division sheets, the amount paid to date of trial by Riss and the remaining balance.

That there were TOFC arrangements between Riss and N & W was not an issue. Riss admitted in its answer that N & W transported trailers for it on the basis of agreements between them. Although Riss made some objections to the division sheets placed in evidence, their authenticity was not seriously questioned. The same is true of the waybills. However, no effort was made to relate the waybills to the numerous division sheets and N & W obviously did not expect the jury to find the division sheet applicable to each movement for which a waybill existed and to determine the proper charge for the movement.

Basically, the proof of N & W's claim depended upon the summary sheets. Those sheets were written, but they were not doc-uments to which Riss was a party. Riss did not acknowledge the correctness of the summary sheets. Cross-examination of N & W's witness was directed at errors in arithmetic, and omissions notable on the face of the documents. Riss' cross-examination brought out some 24 instances in which the summary sheets failed to allow Riss credit for overpayments. The witness also pointed out several errors in computation on the sheets.

■ Although the summary sheets were admissible in evidence (*Rol Miller & Sons, Inc. v. Schultz Products Company,* 418 S.W.2d 721, 723[3, 4] (Mo.App.1967)), their probative value was not thereby established as a matter of law. It remained the burden of plaintiff to show that the summary accurately and correctly showed the state of the account between N & W and Riss. As above noted, this is not a case of a running account where charges simultaneous with a transaction are made and payments received and applied against the charges. Here, for the most part, the charges were made and payments received and thereafter, N & W, months later, sought increased charges. While the somewhat cursory explanation for the changed charges might have been adequate to have permitted a jury to find that the amounts were owed, the summaries coupled with the oral testimony do not require that conclusion as a matter of law.

"The general rule as to 'conclusive documentary evidence' is stated in *Baugh v. Life & Casualty Ins. Co. of Tenn.,* Mo., 307 S.W.2d 660, 664, as follows: ' * * * it must be an instrument or record having legal efficacy to which the one sought to be bound is in some way a party, or the truth of which he vouches for, either expressly or in legal effect, or is estopped to deny.' " *Bakelite Company v. Miller,* 372 S.W.2d 867, 871[4, 5] (Mo.1963). In that case the court stated that a plaintiff's own books and records are not such documentary evidence. See also *Wilson v. Kansas City Life Ins. Co.,* 233 Mo.App. 1006, 128 S.W.2d 319, 321[3, 4] (1939). If the documentary evidence is not of such nature, the fact that the defendant

does not contradict the evidence offered does not make such evidence conclusive. "The jury could believe or not believe plaintiff's uncontradicted or uncontroverted evidence, and if the jury did not believe plaintiff's evidence, it properly could find for defendants." *Bakelite Co. v. Miller*, supra, 372 S.W.2d at p. 871[1, 2].

Appellant has cited no case in which it has been held that documentary evidence such as that here involved suffices to meet plaintiff's burden of proof as a matter of law. Generally where the documentary proof has been held to entitle plaintiff to a directed verdict, the document involved is one to which defendant was a party, such as a note in *Bradley v. Buffington*, 534 S.W.2d 571, 574[8] (Mo.App.1976), or a guaranty agreement, as in *Commerce Trust Company v. Howard*, 429 S.W.2d 702, 707–708[9, 10] (Mo.1968), and *J. R. Watkins Company v. Smith*, 421 S.W.2d 527, 531–532[4] (Mo.App. 1967). *Coleman v. Jackson County*, supra, involved written county budget orders and official public records.

A directed verdict for plaintiff has been recognized as a "violent result," which occurs "very seldom" and then only in "unusual" or "exceptional" cases. *Alaska Federal Savings & Loan Ass'n v. Hoffman*, 485 S.W.2d 118, 120[1] (Mo.App.1972). This is not such a case and the trial court did not err in refusing to direct a verdict in favor of appellant.

In its post-trial motion for judgment, N & W alleged that it was entitled to judgment as a matter of law "under the applicable rules and regulations of the Interstate Commerce Commission." This ground was not stated in plaintiff's motion for a directed verdict. In any event, this assignment of error now based on that theory of liability is necessarily premised upon the assumption that the amount of N & W's claim has been proved as a matter of law. That contention has already been rejected.

Plaintiff's after-trial motion included an alternative prayer for a new trial. Other than the allegations upon which the motion for judgment was based, the only ground for new trial stated was that the verdict was against the weight of the evidence. In this court, appellant contends that it is entitled to a new trial because of error on the part of the trial court in failing to sustain its motion to dismiss defendant's counterclaim at the close of defendant's opening statement because the statement failed to show facts entitling defendant to recover on its counterclaim or alternatively because the counterclaim failed to state a cause of action.

As above noted, the trial court did dismiss defendant's counterclaim at the close of defendant's case and instructed the jury that all evidence in that regard had been withdrawn from its consideration. Appellant contends, however, that this relief was untimely because it permitted Riss to cross-examine N & W's witness about the damage claims and to introduce evidence by its own witness on the subject, resulting in prejudice to N & W and confusing the jury.

This ground of error was not called to the trial court's attention in the motion for new trial. Appellant suggests that it was not required to be because under Rule 78.07 "questions as to the sufficiency of the pleadings to state a claim or defense" are not required to be included in a motion for new trial. While this exception would permit consideration of that question as what was formerly known as a "record" matter, it is doubtful that it was intended to encompass an assignment of error such as here advanced which is directed primarily toward the admission of evidence. Certainly it would not permit the assignment based upon a deficiency in the respondent's opening statement.

■ In any event, the trial court is not to be convicted of error based upon the contention that the counterclaim failed to state a claim. It alleged that trailers in good order were delivered by Riss to N & W and that plaintiff damaged and destroyed them. Although somewhat sketchy, the counterclaim, as against the complaint now voiced, was adequate to state a claim for relief under 49 U.S.C. § 20(11) which makes a carrier liable for damage to cargo entrusted to it unless it can show that the damage

was caused by the act of God, the public enemy, the act of the shipper, public authority or the inherent vice or the nature of the goods. *William A. Smith Contracting Co. v. Missouri Pac. R. Co.*, 481 S.W.2d 580, 583[1, 2] (Mo.App.1972). This claim of error is without merit.

Appellant finally complains that the trial court erred in admitting into evidence a draft dated November 19, 1969, from Riss, payable to N & W in the amount of $5,864.94. Appellant contends that there was no showing of what the draft was issued for and that it, therefore, was not shown to have any logical or legal relevance to N & W's claim, Riss's defense or Riss's counterclaim. Riss counsel used the instrument in cross-examining witness Shaver in an effort to ascertain where, if at all, the N & W summary took such payment into account. The summary did not account for a payment from Riss in this precise amount.

 Appellant's motion for new trial assigned no error on this ground. Appellant would excuse such lack on the basis that specific objection to the use of the evidence was made at the trial. Appellant overlooks the fact that Rule 78.07 merely permits a general specification of error in a motion for new trial when a definite objection was made at the trial. Since no general specification appears in the motion for new trial, appellant cannot take advantage of this rule. *State ex rel. State Highway Comm. v. Parker*, 387 S.W.2d 261, 262[2] (Mo.App. 1965). *Pasley v. Newton*, 455 S.W.2d 43, 47–48[3, 4] (Mo.App.1970), relied upon by appellant, does not support appellant's view of the meaning of Rule 78.07. The case recognizes that a general specification of error in a motion for new trial is sufficient where there has been a specific objection at trial. The case does point out that the purpose of a motion for new trial is to give the trial court a last opportunity to correct its error, and that the motion must call the trial court's attention to the errors claimed to have been made. The motion for new trial in the case in no manner advises the trial court that appellant sought a new trial based on rulings as to the admissibility of

evidence. Therefore, the question has not been preserved for appellate review. Rule 78.07; *State ex rel. Highway Comm. v. Parker*, supra.

 Appellant suggests that review should be made under the "plain error" rule. Rule 84.13(c). As the rule recites, a court will apply the plain error rule only to correct a manifest injustice or to avoid a miscarriage of justice. The error here asserted is not of that nature and this court declines review under the "plain error" rule.

Judgment affirmed.

All concur.